IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDGAR LEROY WARD, #222515,    )
                              )
        Plaintiff,            )
                              )
                              )
v.                            )        CIVIL ACTION NO. 2:04-CV-28-ID
                              )                 [WO]
                              )
GWENDOLYN MOSLEY, *et al.*,   )
                              )
        Defendants.           )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Edgar Leroy Ward ["Ward"], a former state inmate,

complains that the defendants violated his constitutional rights by failing to provide him

adequate medical treatment during his confinement at the Easterling Correctional Facility

["Easterling"].  Ward names Gwendolyn Mosley ["Mosley"], the warden at Easterling; Kay

Wilson ["Wilson"], a nurse; and Dr. Jean Darbouze ["Dr/ Darbouze"] as defendants in this

cause of action.   Ward seeks a declaratory judgment, injunctive relief and monetary

damages from the defendants.[1]

The defendants filed special reports and supporting evidentiary materials addressing

Ward's claims for relief.  Pursuant to the orders entered in this case, the court deems it

---

[1]The court notes that the injunctive relief sought by Ward with respect to transfer to a correctional
medical facility is now moot as Ward is no longer incarcerated in the Alabama prison system.  *See County
of Los Angeles v. Davis*, 440 U.S. 625 (1979); *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974); *Cotterall
v. Paul*, 755 F.2d 777 (11th Cir. 1985)

appropriate to treat these reports as motions for summary judgment.  *See Order of 29 March 2004 - Court Doc. No. 15*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof and Ward's response in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## I.  FACTS

Ward contends that he has "chronic lung problems" associated with a "spot on [his] lungs" and "heart problems . . . [due] to a blood clot . . ."  *Plaintiff's Complaint* at 2.  Ward maintains that, during his confinement in the Easterling Correctional Facility from 31 October 2003 until 18 February 2004, the defendants acted with deliberate indifference to his lung and heart conditions.  *Id*.  In support of this claim, Ward argues that the course of treatment undertaken by the defendants failed to adequately address his conditions thereby warranting transfer "to a medical prison [for treatment of his] chronic health problems . . . and the mental health problems" from which he suffers.  *Id*. at 3.

Ward also complains that he had "to walk over a block and a half . . . in the morning to eat [or] to pill call" and sometimes had to stand in the elements while waiting for his medication.  *Id*.  Finally, Ward asserts that the defendants failed to obtain his medical records from his prior place of incarceration.  *Id*.

The defendants deny that they acted with deliberate indifference to Ward's medical

and mental health conditions and, instead, maintain that they provided Ward with all necessary treatment for these conditions. According to the undisputed medical records, medical personnel evaluated and provided treatment to Ward each time he reported to the health care unit with complaints.[2] The specific treatment prescribed depended upon the observations and evaluations of Ward's condition by the attending health care professional.

To ensure continuous monitoring and evaluation of Ward's lung and heart conditions by health care professionals, medical personnel placed Ward in the cardiac and pulmonary chronic care clinics. Moreover, each time Ward complained to health care personnel of either medical or mental health problems, health care personnel evaluated Ward and provided treatment in accordance with their assessment of his condition.

The medical records also demonstrate that both Dr. Darbouze and the attending psychiatrist prescribed various medications for treatment of Ward's numerous complaints and problems. These records further establish that Ward repeatedly refused medical treatment and failed to take his prescribed medications. Specifically, the medical release forms contained in Ward's records demonstrate that, on numerous occasions, Ward refused medications, sick call screening, electrocardiograms and physician evaluations. Health care personnel therefore routinely advised Ward of the importance of and need for his strict compliance with the prescribed medication and treatment regimens.

---

[2]The medical records to which the court refers are identified in the file as *Medical Defendants' Exhibit A*.

Moreover, medical personnel ordered profiles, special diets, laboratory tests, x-rays and echocardiograms when they deemed such necessary upon evaluation of Ward's complaints.  Based on Ward's assertions of suicidal and homicidal thoughts, mental health personnel assigned him to a "safe cell" for continuous observation.

Dr. Darbouze explained the treatment provided to Ward as follows:

> Mr. Ward . . . has a medical history which is significant for hypertension, chronic obstructive pulmonary disease, hypothyroidism, coronary artery disease, diabetes mellitus (type II), gastro esophageal reflux disease, a small nodule at the base of his left lung (which has been present for several years), and various psychiatric disorders including bipolar disorder and antisocial personality disorder.  He was enrolled in the Chronic Care Clinic, where he was regularly seen and evaluated and had scheduled follow up appointments.  He was also registered in the Mental Health Clinic and received appropriate treatment for his psychiatric disorders.  Mr. Ward was known to be poorly compliant with his treatment, including his frequent failure to take prescribed medications or otherwise to comply with medical instructions.

> It is my understanding that Mr. Ward contends he has not been provided appropriate treatment for his medical conditions. Based on my review of Mr. Ward's medical records, and on my personal knowledge of the treatment provided to Mr. Ward, however, it is my medical opinion that all of Mr. Ward's medical conditions and complaints were evaluated in a timely fashion, and that his diagnosed conditions were treated in a timely and appropriate fashion.  At all times while Mr. Ward was at Easterling Correctional Facility, he received appropriate medical treatment for his health conditions.  Further, both myself, Kay Wilson, R.N., and the other health care providers at Easterling exercised the same degree of care, skill, and diligence in the treatment of Mr. Ward as other similarly situated healthcare providers would have exercised under the same or similar circumstances.  At no time have I or any of the

4

medical staff at Easterling Correctional Facility denied Mr. Ward any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Ward.   At all times while Mr. Ward was a prisoner at Easterling, he received proper treatment for his chronic diseases, and his medical conditions remained stable such that he was not limited in his ability to perform any of the activities of daily living.

From the time of his arrival at Easterling Correctional Facility, Mr. Ward sought a medical transfer to another facility. At no time while I was involved with Mr. Ward's treatment was a transfer to another facility medically indicated, however. While at Easterling, Mr. Ward was also under the care of Dr. Kern, a psychiatrist, for his psychiatric conditions.  When Mr. Ward's psychiatric condition worsened, Dr. Kern requested that Ms. Ward be transferred to Kilby Correctional Facility for psychiatric stabilization.  This transfer was carried out in a timely manner, on February 18, 2004.

It is my understanding that Mr. Ward has also complained that his health problems have been worsened due to exposure to the weather when attending morning "pill call" at the health care unit of Easterling Correctional Facility.  I am familiar with the process and arrangement by which Mr. Ward and other prisoners at Easterling attended "pill call" and received their medications.   In my opinion, there was nothing about this process or arrangement which was medically unsuitable for Mr. Ward.  In other words, there was no medical reason that he could not walk outside for morning "pill calls," and it is my opinion that this did not adversely affect his medical condition.

Finally, Mr. Ward has complained that medical records were not obtained from where he was previously incarcerated.  In fact, the previous records were obtained.  Mr. Ward's chart contains a copy of his medical records from the Georgia Department of Corrections, where he was previously incarcerated.

*Defendants' Exhibit B - Affidavit of Dr. Jean Darbouze at 2-3.*

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Ward is required to produce some evidence which would be admissible at trial supporting his constitutional claims.  *See* Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

To demonstrate a genuine issue, the party opposing summary judgment "must do

6

more than simply show that there is some metaphysical doubt as to the material facts ....

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Ward has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing such treatment

acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).

Correctional officials and prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.

Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's

medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Those responsible for the provision of medical care may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

The evidentiary materials submitted by the parties demonstrate that prison medical personnel assigned Ward to the chronic care clinics to assure continuous monitoring and treatment of his heart and lung conditions.  It is similarly indisputable that medical personnel routinely examined Ward, evaluated his conditions and responded in accordance with their evaluations to his myriad of complaints and requests for treatment.  *See Medical Defendants' Exhibit A - Medical Records of Edgar Leroy Ward*.

The medical records also establish that attending physicians prescribed numerous medications in an effort to treat and stabilize Ward's physical conditions and his mental health disorders.  *Id*.  In addition, the evidentiary materials demonstrate that medical personnel ordered x-rays, echocardiograms and laboratory tests whenever their observations of Ward indicated the need for such actions.   On several occasions, Ward refused medical treatment and failed to take his prescribed medications.

This court has conducted a thorough and exhaustive review of all the evidentiary materials submitted by the parties in this case, and concludes, without hesitation, that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate.   Moreover, there is nothing in these materials which  indicates that the defendants disregarded any risk of harm to Ward's physical or mental health.   Although Ward maintains that he should have been transferred to a correctional medical facility for treatment,  the mere fact that he desired such action, without more and in light of the acknowledged facts of this case, does not amount to deliberate indifference.  *Waldrop*, 871 F.2d at 1033; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).  The record before this court is therefore devoid of evidence indicating that the defendants acted with deliberate indifference.  Consequently, summary judgment is due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before 18 May 2006 the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of May, 2006.


/s/ Vanzetta Penn McPherson
UNITED STATES MAGISTRATE JUDGE

11